HENDERSHOTT *v.* DALE LEONARD PROSPECTING CO.

1. CONTRACTS—SEVERABILITY—EVIDENCE—INTENT.

In action for balance due under plaintiff well driller's second contract relative to drilling an oil well wherein he sought relief against two defendants, an individual and a corporation, each of whom owned a one-half interest in lease covering lands in which well was located, after individual defendant

* Certiorari denied, 308 U. S. 624 (60 Sup. Ct. 379, 84 L. Ed. 521).
—REPORTER.
† Certiorari denied, 255 U. S. 570 (41 Sup. Ct. 375, 65 L. Ed. 791).
—REPORTER.

had paid one-half of amount due under contract, receipt given such defendant by plaintiff after termination of a fourth contract relative to drilling same well, solely between plaintiff and the individual defendant, wherein it was recited payment then made was ''in full payment for all charges (labor, rental of tools & repairs or breakage) to date,'' while not conclusive, was evidence that the parties' intent with respect to second contract was that corporate defendant was solely liable for balance due thereunder.

2. TRIAL—DIRECTED VERDICT—EVIDENCE.
   When the court directs a verdict of no cause of action, the testimony is viewed in the light most favorable to plaintiff.

3. MINES AND MINERALS—CONTRACTS—PARTNERSHIP—OIL LEASE— EVIDENCE.
   In action for balance due under a second contract between oil-well driller and defendants, an individual and a corporation, each of whom then owned a one-half interest in lease on lands where well was located, brought on theory that defendants constituted a mining copartnership, evidence that defendant individual had paid one-half of sums due thereunder and testimony of plaintiff that when those payments were made such defendant owed him nothing else, together with fact that plaintiff entered into two subsequent contracts relative to deepening well with the individual defendant alone, *held*, to require holding as a matter of law that second contract was between plaintiff and defendants, as individuals, with respect to payment of each half of sum due thereunder, and not as partners.

4. CONTRACTS—CONSTRUCTION.
   Courts cannot make a contract between parties different from the agreement entered into by the parties themselves.

Appeal from Kent; Verdier (Leonard D.), J. Submitted April 8, 1941. (Docket No. 11, Calendar No. 41,333.) Decided June 30, 1941.

Assumpsit by L. D. Hendershott against Dale Leonard Prospecting Company, a corporation, and Dewey Battjes on an oil-well drilling contract. From directed verdict and judgment for defendant Battjes, plaintiff appeals. Affirmed.

*Gerald J. Cotter* and *Ray D. Markel,* for plaintiff.

*Norris, McPherson, Harrington & Waer,* for defendant Dewey Battjes.

BOYLES, J.   Plaintiff is an oil- and gas-well drilling contractor.   This suit was brought against the two defendants to recover a sum claimed to be due for work and labor and use of drilling tools on the theory that defendants were either a mining partnership or were engaged in a joint adventure, thereby being jointly and severally liable to the plaintiff.   A third count in plaintiff's declaration claimed recovery under the common counts.   The defendant Dale Leonard Prospecting Company submitted to a judgment by default.   Defendant Dewey Battjes contested the suit before a jury and at the close of the proofs the court on motion directed the jury to bring in a verdict of no cause of action.   Plaintiff appeals from the judgment entered thereon.

There were in reality four contracts between these parties concerning the same subject matter, although plaintiff's claim is based only on the second contract.   In April, 1938, the Dale Leonard Prospecting Company, being the owner of a mining lease covering lands in Huron county, assigned to defendant Battjes a half interest therein, for which Battjes was to pay $3,000.   This sum was deposited by Battjes in a bank under an escrow agreement, to be paid out during the progress of a well to be drilled on the lease.   In May, 1938, a contract for drilling this well down to the Dundee formation was entered into between Dale Leonard Prospecting Company as owner and plaintiff Hendershott.   Under this contract Hendershott was to receive

$3,000 and an assignment of certain other leases. Battjes was not a party to this contract. This well was drilled by Hendershott to the Dundee formation for which he was paid the $3,000 by the Dale Leonard Prospecting Company in accordance with the agreement. Plaintiff admits having received payment in full for everything owing him at that time in connection with the drilling. Shortly thereafter Hendershott entered into a second agreement with the Dale Leonard Prospecting Company and Battjes to deepen the well. This was an oral agreement and is the one over which this suit is brought. Under this agreement, Hendershott was to receive $100 per day for deepening the well. Plaintiff claims this was an agreement between Hendershott as contractor on the one hand, and Dale Leonard Prospecting Company and Dewey Battjes as a mining copartnership on the other hand. Battjes claims it was an agreement between Hendershott and himself individually to pay half of the expense of deepening the well, and with Leonard to pay the other half. The amount which Hendershott was entitled to receive under this contract is not in dispute, neither is it disputed that Battjes paid Hendershott one-half of this amount. The other half was not paid in full by the Dale Leonard Prospecting Company and Hendershott claims that Battjes is equally liable therefor as a mining copartner. This claim will be discussed in detail later.

The two subsequent contracts have no bearing upon the question except as they may throw light upon what the second contract actually was. After the second contract was completed and Mr. Battjes had paid what he claims to be his agreed half of that agreement for deepening the well, a third verbal agreement was entered into between Hendershott and Battjes under which Hendershott agreed

to drill the well still deeper. The Dale Leonard Prospecting Company had no part in this agreement, it was entirely between Hendershott and Battjes. Battjes paid plaintiff in full for all sums due the plaintiff under this third agreement. When plaintiff ceased drilling under this third agreement, Battjes hired men and started to use plaintiff's tools to drill the well deeper. A fourth agreement was then entered into between Hendershott and Battjes individually, under which Battjes agreed to pay plaintiff for the use of his tools and to supervise the further drilling. It is significant that plaintiff's suit, although claimed to be on the theory of liability of a mining partnership, is nevertheless *for work and labor and use of tools* instead of a balance due on $100 per day for drilling deeper, under the second contract. This fourth deepening of the well proved unsuccessful. Subsequently plaintiff and Battjes got together and apparently agreed upon the amount which Battjes owed plaintiff at that time. As a result, Battjes gave the plaintiff his check for $450, containing on its face the words "In full of all charges to date." Hendershott indorsed and cashed this check. At the same time, Hendershott gave Battjes a receipt for the $450, containing the following recital: "being in full payment for all charges (labor, rental of tools & repairs or breakage) *to date.*" Admittedly, this is not conclusive, but it bears on the intent of the parties. The plaintiff made no claim to Battjes at this time, or in fact at any time prior to bringing suit, that Battjes was still liable to plaintiff for the unpaid balance of that half of the drilling expense under the second contract which the Dale Leonard Prospecting Company had not paid.

While the testimony is viewed in the light most favorable to plaintiff when the court directs a ver-

dict of no cause of action, it is apparent from plaintiff's own testimony that the second contract was entered into between Hendershott on the one hand and Battjes and the Dale Leonard Prospecting Company on the other as individuals and not as a copartnership. The circuit judge in directing the verdict concluded that plaintiff's testimony in that respect was much more honest than the theory upon which the suit was brought. Plaintiff's testimony clearly indicates that after he had drilled to the Dundee formation under the original drilling contract with the Dale Leonard Prospecting Company, in the talk that ensued plaintiff was induced to keep on drilling upon the promise of Battjes that he (Battjes) would pay half, and upon the promise of Leonard for the Dale Leonard Prospecting Company that the company would pay half. Plaintiff testified that in this conversation Battjes said he would pay his half, and Leonard said he would try to raise his half. At that time, plaintiff was personally interested in obtaining a successful well by reason of ownership of adjoining leases. In furtherance of this understanding, during the time the well was being drilled deeper under the second contract, plaintiff sent various statements to Battjes for one-half of the charges claimed to be due and also sent statements to the Dale Leonard Prospecting Company for the other half of the charges claimed to be due. Battjes paid his half according to these several statements as the work progressed. Plaintiff in testifying admitted that upon receipt of these several payments from Battjes' in accordance with his billing, the defendant Battjes owed him nothing else, and that if Battjes had owed anything else plaintiff would have sent him a bill for it. It is significant that plaintiff did not bill each of the defendants for the entire expense. Plaintiff in his testimony admitted that

when he stopped drilling under the second contract, Battjes had paid him in full and had a receipt for it; and further admitted that subsequently he took Battjes' check which he indorsed, and signed a receipt in full payment. Plaintiff's sole reliance is upon the claim that during this time Battjes and the Dale Leonard Prospecting Company were in fact copartners by reason of which Battjes is liable for Leonard's unpaid half of the expense. However, during this time plaintiff made no claim against Battjes for any unpaid balance. Plaintiff claims that Battjes urged him to go ahead and deepen the drilling, but does not claim that Battjes agreed to pay for more than half of it. The most that plaintiff claims is, that he (plaintiff) said ''somebody would have to pay it.'' Plaintiff testified he first made up his mind to hold Battjes if the Leonard company didn't pay, when he turned the claim over to his attorney, and that he didn't intend to hold Battjes until the suit was started.

It is plain from plaintiff's own testimony that he contracted with Battjes individually for half the drilling expense under the second contract, and with Leonard for the other half. This conclusion is amply supported not only by plaintiff's own testimony, but by his course of conduct in sending statements and receiving payments, as well as his subsequent third and fourth agreements entered into with Battjes alone. This is not a question of one partner repudiating the debt of the partnership; the second contract was not between plaintiff and a copartnership, it was between plaintiff and individuals. Courts cannot make a contract between these parties different from the agreement entered into by the parties themselves. Battjes cannot be held liable for the unpaid balance of that half of the expense which he did not agree to pay but which Leonard individually contracted with plaintiff to pay. The

court did not err in directing a verdict for defendant Battjes.

Judgment affirmed, with costs.

SHARPE, C. J., and BUSHNELL, CHANDLER, NORTH, WIEST, and BUTZEL, JJ., concurred. MCALLISTER, J., took no part in this decision.